**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

CV 04 3602

)
MAYER ZEILER, FLOCKTEX INDUSTRIES )
LTD., DE-LUX INDUSTRIES, and ACHIM )
DEITSCH TEXTILE INDUSTRIES, )
)
*Plaintiffs,* )
)
v. )
)
JOSEPH DEITSCH, MORDECHAI DEITSCH, )
JACOB PINSON, RACHEL SANDMAN, )
DEITSCH PLASTIC COMPANY, DEITSCH )
PLASTIC PARTNERS, DEITSCH )
INTERNATIONAL SALES CORP., SHALVAH )
PARTNERSHIP, OLDE POINTE )
ASSOCIATED LIMITED PARTNERSHIP, )
ATC PARTNERSHIP, ESDEE REALTY, )
ORANGE INVESTMENT COMPANY, )
WILLOWBROOK VENTURE COMPANY, )
ANNASH, INC., and GREENDEER, )
)
*Defendants* )
)
Supreme Court, Kings Co. )
Index No. 24676-04 )
)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 1 9 2004 ★
BROOKLYN OFFICE

Townes

**MATSUMOTO, M.J.**

## PETITION FOR REMOVAL

The above-entitled action is civil in nature and within the original jurisdiction of

this Court and may therefore be removed pursuant to 28 U.S.C. § 1441 and 9 U.S.C. §

205, in that:

1.     The action seeks to enforce certain arbitration awards and vacate other

arbitration awards arising out of a commercial legal relationship between residents of the

United States and residents of the State of Israel. The relationship involves property

located abroad, envisages performance or enforcement abroad, and has a relation to residents and corporations of the State of Israel.

2.      The "second written agreement" between the parties (the "June 2003 Agreement") is attached to the petition instituting this action as Exhibit B. It demonstrates that the relationship between the parties is commercial, that it envisages performance or enforcement in the State of Israel, and that it relates to residents and corporations of the State of Israel.

3.      Mayer Zeiler is a permanent resident of Israel. He resides at 148 Nachlas Chabad, Kiryat Malachi, Israel      .

4.      Flocktex Industries, Ltd., De-Lux Industries, and Achim Deitsch Textile Industries are Israeli corporations located at 37 Haharoshet St., Kiryat Malachi, Israel.

5.      The arbitration that is the subject of this civil action falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"). The United States and Israel are signatories to the Convention. This Court has original jurisdiction over an action to enforce or vacate awards of the arbitration tribunal under 9 U.S.C. § 203.

6.      The plaintiffs' action to enforce eight "awards" of the arbitration tribunal and vacate the arbitration panel's two recent awards is removable to this Court under 9 U.S.C. § 205.

7.      The above-entitled action is also a civil claim that is within the jurisdiction of this Court under 28 U.S.C. §§ 1332(a)(2). At the time of commencement of this action in New York State and since that time, the individual plaintiff and the three corporate plaintiffs are residents and subjects of a foreign state – to wit, the State of Israel – and the

2

defendants are citizens of the State of New York (Jacob Pinson), the State of Connecticut (Joseph Deitsch, Mordechai Deitsch, Rachel Sandman, Deitsch Plastic Company, Deitsch Plastic Partners, Deitsch International Sales Corp., Shalvah Partnership, Olde Pointe Associated Limited Partnership, ATC Partnership, Esdee Realty, Annash, Inc. and Greendeer), and the State of Ohio (Orange Investment Company, Willowbrook Venture Company).

8.     The amount in controversy, exclusive of interest and costs, is in excess of $75,000. An arbitration award that the petition asks to have vacated (Petition Exhibit E) requires plaintiff Zeiler to pay $794,145.16 to certain of the defendants.

9.     The above-entitled action was commenced on August 4, 2004, in the Supreme Court of the State of New York, County of Kings, with the filing of the "Petition To Confirm Certain Arbitration Awards and To Vacate Arbitration Awards Dated May 7, 2004 and June 16, 2004," a copy of which is attached hereto as Exhibit 1.

10.     Defendant Jacob Pinson was personally served with a copy of the said Petition on August 4, 2004.

11.     No further proceedings have been held in this action in the Supreme Court of the State of New York.

12.     This Petition for Removal is filed with this Court within 30 days after service of the "Petition To Confirm."

3

WHEREFORE , all defendants request that the above-entitled action be removed

pursuant to 28 U.S.C. § 1441 and 9 U.S.C. § 205 from the Supreme Court of New York,

County of Kings, to the United States District Court for the Eastern District of New York.

Dated: August 19, 2004                    Respectfully submitted,

Nathan Lewin (NL 3424)
Alyza D. Lewin (AL 2284)
LEWIN & LEWIN, LLP
1828 L Street, N.W.
Suite 1000
Washington, DC  20036
(202) 828-1000

Thomas A. Kissane (TK 8221)
SCHLAM STONE DOLAN, LLP
26 Broadway
New York, NY 10004
(212) 344-5400

*Attorneys for all Defendants*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

|  |  |
|---|---|
| MAYER ZEILER, FLOCKTEX INDUSTRIES LTD., DE-LUX INDUSTRIES, and ACHIM DEITSCH TEXTILE INDUSTRIES,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOSEPH DEITSCH, MORDECHAI DEITSCH, JACOB PINSON, RACHEL SANDMAN, DEITSCH PLASTIC COMPANY, DEITSCH PLASTIC PARTNERS, DEITSCH INTERNATIONAL SALES CORP., SHALVAH PARTNERSHIP, OLDE POINTE ASSOCIATED LIMITED PARTNERSHIP, ATC PARTNERSHIP, ESDEE REALTY, ORANGE INVESTMENT COMPANY, WILLOWBROOK VENTURE COMPANY, ANNASH, INC., and GREENDEER,<br><br>*Defendants.* | Index No. 24676-04 |

## NOTICE OF FILING OF PETITION FOR REMOVAL

Pursuant to 28 U.S.C. § 1446(d), the defendants Jacob Pinson, Joseph Deitsch,

Mordechai Deitsch, Rachel Sandman, Deitsch Plastic Company, Deitsch

Plastic Partners, Deitsch International Sales Corp., Shalvah Partnership, Olde Pointe

Associated Limited Partnership, ATC Partnership, Esdee Realty, Annash, Inc.,

Greendeer, Orange Investment Company and Willowbrook Venture Company give notice

to the Supreme Court of the State of New York and to Orans, Elsen & Lupert LLP,

attorneys for the plaintiffs Mayer Zeiler, Flocktex Industries Ltd., De-Lux Industries, and

Achim Deitsch Textile Industries, that the defendants have filed a Petition for Removal,

removing the above-captioned action to the United States District Court for the Eastern

District of New York. A copy of the Petition for Removal is attached to this Notice.

Dated: August 19, 2004

Lewn + lewn

Nathan Lewin
Alyza D. Lewin
LEWIN & LEWIN, LLP
1828 L Street, N.W.
Suite 1000
Washington, DC 20036
(202) 828-1000

Thomas A. Kissane
SCHLAM STONE DOLAN, LLP
26 Broadway
New York, NY 10004
(212) 344-5400

*Attorneys for all Defendants*

2

UCS-840(REV 1/2000)

REQUEST FOR JUDICIAL INTERVENTION

| Supreme Court | Kings | 8 4676-04 | August 4, 2004 | For Clerk Only |
| COURT | COUNTY | INDEX NO. | DATE PURCHASED | |

PLAINTIFF(S): Mayer Zeiler, Flocktex Industries Ltd., De-Lux Industries, and Achim Deitsch Textile Industries

For an Order Pursuant to Article 75 of the CPLR Vacating Arbitration Awards and Confirming Arbitration Awards

DEFENDANT(S): Joseph Deitsch, Mordechai Deitsch, Jacob Pinson, Rachel Sandman, Deitsch Plastic Company, Deitsch Plastic Partners, Deitsch International Sales Corp., Shalvah Partnership, Olde Pointe Associates Limited Partnership, Esdee Realty, Orange Investment Company, Willowbrook Venture Company, Annash, Inc., and Greendeer.

IAS entry date

Judge Assigned

RJI Date

Date issue joined: _____N/A_____   Bill of particulars served (Y/N):   [ ]Yes   [X]No

NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date:_____) Relief sought _____

[ ] Order to show cause (clerk enter return date:_____) Relief sought_____

[ ] Other ex parte application (specify:_____)

[X] Notice of petition (return date: 8/20/04)
Relief sought   Confirm/Vacate Arbitration Award

[ ] Notice of medical or dental malpractice action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify:_____)

CAWD
(P)

NATURE OF ACTION OR PROCEEDING (Check ONE box only)

MATRIMONIAL
[ ] Contested                                        -CM
[ ] Uncontested                                      -UM

COMMERCIAL
[ ] Contract                                         -CONT
[ ] Corporate                                        -CORP
[ ] Insurance (where insurer is a party, except arbitration)   -INS
[ ] UCC (including sales, negotiable instruments)    -UCC
[ ] *Other Commercial                                -OC

REAL PROPERTY
[ ] Tax Certiorari                                   -TAX
[ ] Foreclosure                                      -FOR
[ ] Condemnation                                     -COND
[ ] Landlord/Tenant                                  -LT
[ ] *Other Real Property                             -ORP

OTHER MATTERS
[ ] *                                                -OTH

TORTS

Malpractice
[ ] Medical/Podiatric        -MM
[ ] Dental                   -DM
[ ] *Other Professional      -OPM

[ ] Motor Vehicle            -MV
[ ] *Products Liability      -PL

[ ] Environmental
[ ] Asbestos
[ ] Breast Implant
[ ] *Other Negligence
[ ] *Other Tort (including Intentional)

SPECIAL PROCEEDINGS
[X] Art. 75 (Arbitration)
[ ] Art. 77 (Trusts)
[ ] Art. 78
[ ] Election Law
[ ] Guardianship (MHL Art 81)
[ ] *Other Mental Hygiene
[ ] *Other Special Proceeding

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------ X

MAYER ZEILER, FLOCKTEX INDUSTRIES
LTD., DE-LUX INDUSTRIES, and ACHIM
DEITSCH TEXTILE INDUSTRIES,

                Petitioner,

For an Order Pursuant to Article 75 of the CPLR
Vacating Arbitration Awards and Confirming
Arbitration Awards

          --against--

JOSEPH DEITSCH, MORDECHAI DEITSCH,
JACOB PINSON, RACHEL SANDMAN,
DEITSCH PLASTIC COMPANY, DEITSCH
PLASTIC PARTNERS, DEITSCH
INTERNATIONAL SALES CORP., SHALVAH
PARTNERSHIP, OLDE POINTE ASSOCIATES
LIMITED PARTNERSHIP, ATC PARTNERSHIP,
ESDEE REALTY, ORANGE INVESTMENT
COMPANY, WILLOWBROOK VENTURE
COMPANY, ANNASH, INC., and GREENDEER.

                Respondents.

------------------------------------------------------------------ X

Index No. 24676-04

**NOTICE OF PETITION**

2004 AUG -4 PM 3: 53
KINGS COUNTY CLERK
RECEIVED

SIRS AND MADAM:

PLEASE TAKE NOTICE that upon the Petition dated August 4, 2004, and the exhibits

annexed thereto, and all proceedings herein, the petitioners, Mayer Zeiler, Flocktex Industries

Ltd., De-Lux Industries, and Achim Deitsch Textile Industries, will move this Court at 360

Adams Street, Brooklyn, New York, on August 20, 2004, at 9:30 a.m., or as soon thereafter as

counsel can be heard, for:

(1) an Order pursuant to CPLR 7510 confirming the awards of the arbitrators in the

arbitration proceedings between the parties, dated September 1999, July 3, 2000, July 6, 2000,

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------X

MAYER ZEILER, FLOCKTEX INDUSTRIES
LTD., DE-LUX INDUSTRIES, and ACHIM
DEITSCH TEXTILE INDUSTRIES,

              Petitioner,

For an Order Pursuant to Article 75 of the CPLR
Vacating Arbitration Awards and Confirming
Arbitration Awards

         --against--

JOSEPH DEITSCH, MORDECHAI DEITSCH,
JACOB PINSON, RACHEL SANDMAN,
DEITSCH PLASTIC COMPANY, DEITSCH
PLASTIC PARTNERS, DEITSCH
INTERNATIONAL SALES CORP., SHALVAH
PARTNERSHIP, OLDE POINTE ASSOCIATED
LIMITED PARTNERSHIP, ATC PARTNERSHIP,
ESDEE REALTY, ORANGE INVESTMENT
COMPANY, WILLOWBROOK VENTURE
COMPANY, ANNASH, INC., and GREENDEER.

              Respondents.

-----------------------------------------------------------------X

Index No. __24676 -04__

**PETITION TO CONFIRM
CERTAIN ARBITRATION
AWARDS AND TO VACATE
ARBITRATION AWARDS
DATED MAY 7, 2004 AND
JUNE 16, 2004**

2004 AUG -4  PM 3: 53
KINGS COUNTY CLERK
RECEIVED

TO THE SUPREME COURT OF THE STATE OF NEW YORK:

The Petitioners, Mayer Zeiler, Flocktex Industries Ltd., De-Lux Industries Ltd., and

Achim Deitsch Textile Industries, by their attorneys, Orans, Elsen & Lupert LLP, allege and

respectfully show to this Court as follows:

## BACKGROUND OF THE REQUEST TO VACATE ARBITRATION RULINGS DATED MAY 7, 2004 AND JUNE 16, 2004.

1.    Petitioner Mayer Zeiler ("Zeiler") and the four individual respondents (Joseph

Deitsch, Mordechai Deitsch, Jacob Pinson and Rachel Sandman) have been shareholders or

partners in various commercial businesses and real estate ventures in the United States and in Israel.

2.     In the late 1990's, Zeiler, the four individual respondents and others concluded that they should sever their business connections but were unable to resolve their differences amicably.  They then executed a written agreement, a copy of which is annexed hereto and made a part hereof as Exhibit A, to litigate their differences before a "Beth Din," a rabbinical tribunal that conducts traditional religious arbitrations under Halachic, i.e., Jewish law.  Beth Din rulings have been regularly enforced by courts in this State as long as they have complied with the requirements of Article 75 of the CPLR.  The litigants agreed in their written agreement that the arbitrators would be Rabbis Moshe Tendler, Moshe Bogomilski and Shmuel Chaim Gurwitz.

3.     Also parties to the arbitration agreement were the parties' commercial businesses, which include Zeiler's Israeli companies, the petitioners Flocktex Industries Ltd., De-Lux Industries Ltd., and Achim Deitsch Textile Industries, as well as the individual respondents' American companies, the respondents Deitsch Plastic Co., Inc., Deitsch Plastic Partners, Deitsch International Sales Corp., and Annash Inc.  In addition, the parties' jointly-held real estate entities were parties to the arbitration.  These entities include the respondents Shalvah Partnership, Olde Point Associates Limited Partnership, ATC Partnership, Esdee Realty, Orange Investment Company, Willowbrook Venture Company, Annash, Inc., and Greendeer.

4.     The petitioners and respondents' written agreement to arbitrate only before the three named Rabbis was later confirmed in a second written agreement dated June 10, 2003 (hereinafter the "June 2003 Agreement"), which provided for arbitration before a Beth Din, defined as follows: " 'Beth Din' shall mean a judicial tribunal governed by Halachic law, the members of which are the honorable Rabbi Moses D. Tendler, Rabbi Shmuel C. Gurwitz and

Rabbi Moshe Bogomilski, or any other tribunal governed by Halachic law upon which the Parties mutually agree." A copy of the June 2003 Agreement is annexed as Exhibit B.

5.    The June 2003 Agreement was executed as the result of earlier rulings by the three named arbitrators that in essence held that petitioner Zeiler should become the sole owner of the Israeli-based companies (petitioners Flocktex, De-Lux, and Achim Deitsch), and that the four individual respondents and other family members should become the sole owners of the American based companies (respondents Deitsch and Annash, Inc.[1]), excluding the jointly held real estate in which the parties were to remain partners. The Beth Din's rulings also required respondents to deliver to petitioners information concerning jointly owned real estate, and also dealt with Zeiler's life insurance policies, pension, and other matters, which are discussed below. Thus, by the time the June 2003 Agreement was executed, the three named arbitrators had been hearing and resolving disputes for about four years and were uniquely qualified to continue as arbitrators, which is why they were named in the June 2003 Agreement as the sole persons who could resolve disputes arising therefrom absent further agreement from all the parties. The June 2003 Agreement was executed after lengthy negotiations involving the three Beth Din Rabbis, the parties, and their counsel. Moreover, because the arbitrators directed the parties to enter into it, the June 2003 Agreement constitutes another award of the Beth Din.

6.    The only panel to which petitioners ever agreed was a panel comprised of all three named Rabbis, who were intimately familiar with the parties, their businesses, and the issues involved in their disputes.

7.    In about April 2004, Rabbi Tendler, one of the panel members, resigned from the panel, stating that the other two panel members had not acted properly. His letter dated April 25,

---

[1] As explained below, Annash Inc. also owned real estate that the parties jointly owned.

3

2004 confirming his resignation is annexed as Exhibit C. His resignation effectively concluded the arbitration process and dissolved the Beth Din making the remaining two arbitrators incapable of hearing or adjudicating any further issues as a matter of law.

8.      Nevertheless, the two other panel members, over the written objection of petitioners, in the absence of the third arbitrator, and without the participation of petitioners, purported to conduct hearings and to issue rulings. In the first ruling (Exhibit D), dated May 7, 2004, the two remaining arbitrators purported to retain jurisdiction over the parties and their disputes, despite Rabbi Tendler's resignation. A second ruling (Exhibit E) dealt with a tax issue and is dated June 16, 2004. These two purported rulings of May 7, 2004 and June 16, 2004 are invalid and should be vacated because a proper ruling can only be issued by a panel which includes all three named arbitrators.

## BACKGROUND OF PETITIONERS' REQUEST TO CONFIRM CERTAIN BETH DIN RULINGS.

9.      The Beth Din issued a number of valid rulings before the third arbitrator resigned, including many dealing with jointly owned real estate, life insurance, pensions and other matters with which respondents have failed to comply. Petitioners hereby seek to confirm those awards.

10.     Many of the real estate interests, including CGS Partnership, WMR, WB Investments, and Geulah Realty, are held in the name of respondent Shalvah Partnership ("Shalvah"), a U.S. based partnership owning real estate in the United States. Upon information and belief, Zeiler and each of the four individual respondents own 20% of Shalvah. Upon information and belief, the other real estate ventures, including Olde Point Associates Limited Partnership, ATC Partnership, Esdee Realty Corporation, Orange Investment Company, Willowbrook Venture Company, Annash, Inc., and Greendeer are owned in the same

4

percentages directly by these five individuals. At all times, the jointly held real estate investments have been controlled by the individual respondents.

11.     Among the Beth Din's valid rulings that were issued when all three panel members participated in the arbitration was one dated September 1999, which provided that Zeiler "should be provided with a full and accurate listing of . . . Real Estate investments in full detail[.]" In addition, the Beth Din subsequently issued another ruling on July 3, 2000 which stated: "Zeiler is entitled to an accounting and payment of all income due him from Greendeer Real Estate and Willowbrook Venture Company as well as any other, if any, real estate incomes." On July 6, 2000, the three Beth Din arbitrators issued another ruling that stated: "Upon satisfaction of the Beth Din ruling, the American shareholders [i.e. the individual respondents] are to provide Zeiler with a complete accounting of his real estate investments, with documentation for the past five years." When respondents failed to provide either the accounting or the required documentation, the three Beth Din arbitrators were forced to issue yet another ruling dated June 24, 2001 which provided: "Zeiler should immediately be given all the real estate information as indicated in the previous *psakim* [rulings]". When the respondents yet again failed to provide the required information (despite many assurances that they would do so), the three arbitrators ruled on May 14, 2002 that "Mr. Zeiler, or his representative, has the right to review the books of the American real estate partnerships." The May 14th ruling and two subsequent rulings dated March 4, 2003 and April 28, 2003 asked the panel's accountant, Abraham Roth, to make sure the information was delivered, but he was unable (or unwilling) to perform this task successfully. The various rulings set forth in this paragraph are annexed as Exhibit F, and are marked to show the particular sections that deal with real estate issues.

5

12.     Respondents' repeated promises to provide information to petitioners, but failure to do so or to comply with these many Beth Din rulings, eventually led Rabbi Tendler, one of the three Beth Din arbitrators, to resign in April 2004. He stated that one of the reasons for his resignation was that he had been misled into believing that the required real estate documentation had been made available to Zeiler. See Exhibit C, Rabbi Tendler's letter confirming his resignation. He was also frustrated that after so many rulings and so many years, the other arbitrators did not enforce their rulings to require the individual respondents to provide Zeiler with the information. Rabbi Tendler's letter dated April 25, 2004 expressing this frustration is annexed as Exhibit G.

13.     The June 2003 Agreement (Exhibit B) followed the Beth Din rulings concerning real estate, referred to above in paragraphs 4-5 of this Petition, and required respondents to deliver detailed information and to provide an accounting about all real estate investments to petitioners, as follows:

"8.1. MZ [Zeiler] and all of his family members shall be provided with the following information upon the signing of this Agreement:

8.1.1 All of his and their interests in real estate, including particulars of all assets and relating valuations relating thereto, in accordance with the ruling of the Beth Din dated March 4 2003.

8.1.2 A complete accounting of all of his and their interests in real estate, including particulars of all income, expense and distributions relating thereto, in accordance with the ruling of the Beth Din dated March 2003."

6

14.     Petitioners on numerous occasions have requested respondents to provide them with the real estate information and accounting that the Beth Din ordered and that the June 2003 Agreement required, but respondents have failed to comply with their obligations.

15.     The three members of the Beth Din also properly ruled in September of 1999 (Exhibit F) and on February 18, 2004, that petitioners are entitled to all of their life insurance and pension fund rights. The February 18, 2004 ruling is annexed as Exhibit H.

16.     Zeiler and his family's rights to pension and life insurance is confirmed in paragraph 8.1.3 of the June 2003 Agreement (Exhibit B) which requires that Zeiler and his family members be provided with "all of his and their pension and insurance rights" and that this information be delivered to them "upon the signing of this Agreement." Paragraph 8.3 further requires respondents to deliver "all monies (including any pension funds, life insurance policies and any other financial assets)...to each of them forthwith upon their written request."

17.     In addition, the June 2003 Agreement requires that respondents transfer life insurance policies to Zeiler and his family members. In its February 18, 2004 ruling (Exhibit H), the Beth Din affirmed this obligation, stating that "[t]he life insurance policies of M. Zeiler are to be transferred to him without any payment."

18.     The June 2003 Agreement further provided that petitioners should be removed from any guaranties that Zeiler gave when he was still a minority owner of the United States operating companies, including Deitsch Plastics Company, that, pursuant to that agreement, are now owned entirely by the individual respondents. The June 2003 Agreement so provides in paragraph 8.1.4.

19.     All the arbitration rulings referred to in this Petition have been properly delivered to all the parties.

20. This Petition is brought within one year after the Beth Din concluded and could no longer properly rule on the parties' disputes, i.e. after Rabbi Tendler resigned in April 2004. Petitioners could not seek secular confirmation of any of the Beth Din's rulings until after this conclusion.

21. Venue and jurisdiction are proper in this court because inter alia the Beth Din conducted its hearings and rendered its decisions in Brooklyn and one of the respondents, Jacob Pinson, resides in Brooklyn.

WHEREFORE, petitioners respectfully request that this Court:

a. Enter an Order confirming the following awards of the Beth Din: September 1999, July 3, 2000, July 6, 2000, June 24, 2001, May 14, 2002, March 4, 2003, April 28, 2003, and February 18, 2004;

b. Enter an Order vacating the awards of the purported Beth Din dated May 7, 2004 and June 16, 2004; and

c. Grant such other relief as the Court deems proper.

Dated: August 4, 2004
New York, New York

ORANS, ELSEN & LUPERT LLP

By: _____

Leslie A. Lupert
Sarah P. Karwan
One Rockefeller Plaza
New York, New York 10020
(212) 586-2211

*Attorneys for Petitioners*

8

06/21/02 15:27 FAX 2127840259 @003/003

22.9 196

## שטר בירורין

חתימת ידינו דלמטה תעיד עלינו כמאה עדים שאנחנו הח"מ קבלנו עלינו בקנין אגו"ס ועל וגו' ...

... לבא ולדון בפניהם בכל ... ודברים ודברים שיש ביניעו, וחברו מאשרים בזה כי קבלנו עלינו לקיים את פסק הדין שיצא מלפני ביה"ד זה, בין מדין ובין בפשרה ...

פי החלטת הדיינים הנ"ל ללא שום זכות ערעור, לא לפני בי"ד אחר בדיני ישראל ולא לפני ערכאות המדינה, אלא עלינו לקיים את פסק הדין כפי אשר יצא מלפני בי"ד הנ"ל. ללא שום טו"מ. ואין הדיינים צריכים להודיע לביאור בבתי משפט וכו'. ואין הבי"ד צריך לנמק את פסק הדין. ומוחלים אנו מראש על כל תביעה ממון שיכולה להיות לנו על דייני הבד"ץ.

כן אנו מקבלים על עצמנו שאם לא יופיע אחד מאתנו הצדדים (אחד קבלת קנין) לישיבת בית דין במועד הנקבע הרשות ביד'י הבד"ץ לדון שלא בפניו.

הרשות ביד' הבד"ץ להוציא פסקי דין ביניים כפי ראות עיניהם ולהוסיף לשנות ולפרש את פסקי הדין שנתנו.

כל זה נעשה בקנין גמור אגב סחד בביטול כל מודעות דלא כאסמכתא ודלא כטופסי דשטרא רק על צד היותר טוב ומועיל, ולא יפסל שטר זה לא בחסיד ריתיר ולא במחק וטשטוש

ולראיה באנו עה"ח יום ___ לחודש ___ שנת ___

נאום _____

נאום _____

[signatures]

Personal and for
FLOCKTEX ISRAEL, DELUXE
ACUIM DEITSCH AND
ALL U.S. CORP.

Personal
DEFFSCH PROBOS CS
DISC
ESSDEC
AVNEEL
+ all U.S. Corp. + Floater, Deluxe
Achim Deitsch + a K OP
Israeli Corp

# FREE TRANSLATION

## Arbitration Agreement

Our signature below will be a witness upon us like a hundred witnesses that we the undersigned accepted upon us Rabbi Moshe Tendler, Rabbi Moshe Bogomilski and Rabbi Shmuel Chaim Gurwitz as arbitrators relating to the claims between ourselves. We confirm that we accept upon ourselves to abide by the rulings of this Bais Din both if they rule in accordance with Jewish law or according to a compromise similar to what the Jewish law is based on the decision of the majority of the arbitrators without any right of appeal not before a different Bais Din under Jewish law and not before secular court. We agree to abide by the rulings of the Beth Din without any complaints. The arbitrators do not have to appear and explain themselves in front of any other court neither do they have to explain the decision. We agree to waive any monetary claims we may have on any of the arbitrators of the Bais Din.

We accept upon ourselves that if one of the parties does not appear to an arbitration hearing in the appointed time, the arbitrators have a right to rule without his appearance.

The arbitrators have a right to issue interim rulings as they see fit and to add, change or explain previously issued rulings.

The above was accepted upon ourselves in the optimal manner under Jewish law and this agreement will not become invalidated due to omissions, extra items, erasures or illegibility.

We have affixed our signature on the Tenth day of Ellul 5759 [September 22, 1999].

Signed,

Mayer Zeiler personal and for Flocktex Israel, Deluxe, Achim Deitsch and all US corps.

[US Shareholders] personal, Deitsch Plastics, DISC, Esdee, Annash and all US Corp., and Flocktex, Deluxe, Achim Deitsch and all Israeli corps.
Mordechai Deitsch,
Joseph Deitsch
Jacob Pinson
Joshua Sandman

# SHARES SALE AGREEMENT

THIS AGREEMENT is made this 10th day of June 2003, by and between:

Mayer Zeiler with US Social Security number 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, or anyone on his behalf, including without limitation his spouse, children and their spouses, or any company designated by him hereinafter, jointly and severally, referred to as "MZ"), of the first part;

AND

Mordechai Deitsch US Social Security Number 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, Joseph Deitsch US Social Security Number 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, Jacob Pinson US Social Security Number 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, and Rachel Sandman US Social Security Number 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 (hereinafter together with any of their spouses and children referred to, jointly and severally, as the "US Parties"), of the second part,

(each of MZ and the US Parties shall be referred to as a "Party" and jointly the "Parties").

WHEREAS     the Parties wish to divide their respective interests and share holdings in the Israeli Companies and the US Companies, as set forth herein;

NOW THEREFORE, IT IS AGREED AS FOLLOWS:

1.   In this Agreement the following terms shall have the meanings assigned to them below:

    "Agreement"     Shall mean this Agreement dated the 10th day of June 2003;

    "Beth Din"     Shall mean a judicial tribunal governed by Halachic law, the members of which are the honorable Rabbi Moshe D. Tendler, Rabbi Shmuel C. Gurwitz and Rabbi Moshe Bogomilski , or any other tribunal governed by Halachic law upon which the Parties mutually agree;

Page 2 of 18

| | |
|---|---|
| "Balance" | Shall mean, at any time, the balance of the Consideration due to the US Parties under this Agreement, and all interest accrued thereon; |
| "Consideration" | Shall mean the total sum of US$ 12,000,000, to be paid by MZ to the US Parties for the Israeli Shares, which is comprised of the amounts set forth in Section 2.2 (an amount of USD 8,000,000), Section 2.5 (an amount of USD 1,800,000) and Section 3 (the US$ 2,200,000 value of the US Shares) hereof and any interest, and compound interest (if any) accrued thereon; |
| "Effective Date" | Shall mean, September 21, 1999; |
| "Flocktex Land" | Shall mean real estate assets in which Flocktex has propriety rights, directly or indirectly, as detailed in Schedule A hereto; |
| "Israeli Companies" | Flocktex Industries Ltd. ("Flocktex") and Achim Deitsch Textile Industries Ltd. ("Achim"); |
| "Israeli Shares" | Shall mean the complete and entire share-holdings and interest of the US Parties in the Israeli Companies and all rights in connection thereto, immediately prior to the Effective Date; |
| "Related Industries" | Shall mean US entities other than Deitsch Plastic Company, Inc. as set forth in Schedule B hereto; |
| "Securities" | Flocktex Land, and MZ's share in the US Land; |
| "US Companies" | Shall mean Deitsch Plastic Company Inc. and Related Industries; |



"US Land"   As set forth as Schedule C hereto.

"US Shares"  Shall mean the complete and entire share-holdings and interest of MZ in the US Companies and all rights in connection thereto, immediately prior to the Effective Date. For the avoidance of any doubt, the US Shares shall not include any of MZ's interests, of any kind, in the US Land;

2. **The Israeli Companies**

2.1 On the Effective Date, the US Parties have irrevocably sold to MZ, and MZ has irrevocably purchased from the US Parties all the Israeli Shares. The consideration for the sale of the Israeli Shares is the Consideration agreed upon in this Agreement, and this Agreement includes all the obligations of MZ with regard to the sale of the Israeli Shares by the US Parties.

2.2 A sum of US$8 Million (eight million US Dollars) out of the Consideration shall be paid by MZ, to the US Parties jointly, by way of quarterly installments, of USD 181,818 each, over a period of 11 years, commencing as of the fourth quarter of 1999, on the first business day (in Israel and the U.S.) of every quarter. Such payments shall be effected into Account No. 258391 at Bank Hapoalim B.M., Montefiore Branch (781), or by any other method as the US Parties instruct MZ. All such quarterly payments shall bear interest as of July 1, 2000 until the date that each such quarterly payment has actually been paid.

2.3 It is hereby declared and acknowledged that until 11 May, 2003 the following payments have been made by MZ to the US Parties as part of the Consideration (and in addition to the amounts of $1,800,000 and $2,200,000 that were already paid by MZ to the US Parties, as provided under Sections 2.5 and 3 respectively): (a) 14 quarterly payments in a total amount of USD 2,545,452 US Dollars; (b) all interest paid together with each quarterly payment in a total amount of USD 1,614,445 US Dollars; and (c) interest accrued on the above mentioned amounts during the period that these amounts were held in trust by HFN Trust Company Ltd in total amount of 166,979 US Dollars. At the date of this Agreement the balance remaining to be paid under the above amount of USD 8,000,000 is 5,454,548 US Dollars

(principal only, without interest) in 30 quarterly payments. MZ shall procure that at Closing, HFN Trust Company Ltd. shall transfer to the US Parties, all ~~the quarterly payments made by MZ up to the date of Closing, which HFN~~ Trust Company Ltd. holds in trust in favor of the US Parties, including all interest paid together with each payment and including all interest accrued thereon during the time these monies were held in the said trust account.

2.4  The sum due under clause 2.2 or any part thereof, other than the payments made to date by MZ shall bear compound interest at the prevailing US Prime Rate from July 1, 2000 until the actual date of each payment. Such interest shall be compounded on a quarterly basis. Unless otherwise proved to be manifestly incorrect by the party objecting, the reference to the US Prime Rate in the Wall Street Journal shall be presumed correct and shall be used by the parties as prima facie evidence thereof.

2.5  In addition to the consideration in the amount of US$ 8 Million (eight million US Dollars) as set forth in Section 2.2, above, it is hereby acknowledged that a sum of US$ 1,800,000 (one million eight hundred thousand US Dollars) which forms part of the Consideration has already been paid by MZ to the US Parties prior to the Effective Date by way of set-off against all monies owed by the US Companies to MZ and that an amount of US$ 2,200,000 was paid by way of transfer of the US Shares to the US Parties.

2.6  The US Parties undertake to promptly perform, forthwith upon first demand of MZ, every reasonable step that will be required by any authority in order to perfect the transfer of the Israeli Shares to MZ, so that such transfer of the Israeli Shares has full legal validity under any law and jurisdiction. It is hereby explicitly declared and acknowledged that the US Parties have irrevocably sold to MZ on the Effective Date any shares and/or rights and/or interest that the US Parties may have had in Flocktex and in Achim (to the extent that the US Parties have any such shares, rights or interests) and that such shares, rights and interests are fully redeemed. MZ acknowledges that he has to comply with his obligations pursuant to this Agreement and pay the US Parties the Consideration for the Israeli Shares. It is hereby explicitly declared and acknowledged that as of the Effective Date the US Parties have no rights or interest whatsoever in the Israeli Companies.

2.7    Prepayment

MZ shall have the right, at any time, to prepay the Consideration at its
nominal USD non-discounted amount, in whole or in part, subject to all the
following cumulative conditions:

2.7.1    The US Parties actually received a notice of prepayment (hereinafter
in this Section 2.7: "Prepayment Notice"), 30 days prior to the due
date of payment specified in the same Prepayment Notice;

2.7.2    The Prepayment Notice shall specify the date and amount of
prepayment in accordance to the provisions of this Section 2.7;

2.7.3    MZ shall be entitled to call off any Prepayment Notice that he has
sent to the US Parties, within 15 days from the date such
Prepayment Notice was sent, and such revoked Prepayment Notice
shall be null and void and shall not bind MZ whatsoever. Once a
Prepayment Notice has been delivered to the US Parties and has not
been revoked by MZ pursuant to this Section 2.7.3, the date and
amount set forth in the Prepayment Notice will be fully binding
upon MZ.

2.7.4    Any partial pre-payment shall in no event be less than USD 250,000
(two hundred and fifty thousand US Dollars);

2.7.5    M.Z. shall not be entitled to any discount for prepayment; and

2.7.6    For the avoidance of any doubt, interest shall be paid by MZ upon
and in respect of any prepayment under the Consideration as of July
1, 2000 up until the date that such prepayment has actually been
made and received by the US Parties.

2.8    The US parties shall be entitled to a refund of US$ 302,122 on December 31,
2005 and of US$ 83,057 on December 31, 2006 (those amounts constitute the
US Parties' 2/3 share of the blocked loans, as described in the applicable
letter of approval from the Israeli Investments Center). It is ratified that the
said amounts shall bear no interest, such that the amounts to which the US
Parties shall be entitled to receive under this Section 2.8 will be only the
amounts specified herein. At Closing, MZ shall provide the US Parties with
an assignment in favor of the US Parties with respect to the payment of the
blocked loans in the form attached hereto as Schedule 2.8, along with all

documentation relating to the blocked loans, including documentation relating to blocking periods and the sums of refund.

### 3.  The US Companies

On the Effective Date, MZ has irrevocably transferred the US Shares and any rights and interests he may have had in the US Companies and any interest specified in Schedule 3 to the US Parties. It is hereby acknowledged that the US Parties have already paid MZ in consideration for the US Shares an amount of US$ 2,200,000 as full and complete consideration for the US Shares, by way of set-off against the Consideration. MZ undertakes to promptly perform, forthwith upon first demand of the US Parties, every reasonable step that will be required by any authority in order to perfect the transfer of the US Shares to the US Parties, so that such transfer of the US Shares has full legal validity under any law and jurisdiction. It is hereby explicitly declared and acknowledged that as of the Effective Date MZ has no rights or interest whatsoever in the US Companies.

### 4.  Additional Undertakings of MZ and Representations

#### 4.1  Documents:

Upon the closing of this Agreement, MZ shall deliver to the US Parties all the documents relating to the valid and binding Mortgage and pledge over the Flockiex Land, as set forth in Section 6.1.1 and all other documents as set forth herein and in the Closing Protocol attached hereto as Schedule 4.1;

#### 4.2  Lien and Set-Off

MZ shall not exercise any right of lien or set off against the Balance, or any part thereof, either directly or indirectly, including by way of injunction or otherwise, unless a written notice from MZ was given to the US Parties regarding the set-off (such notice shall detail the obligation of the US Parties against which the set-off is made and the amount thereof). Any set-off shall be made only at the instruction of the Beth Din. Notwithstanding anything to the contrary in this Agreement, MZ shall have the right to set off the following amounts, pursuant to previous rulings of the Beth Din, without any further authorization from the Beth Din: (1) After Closing, $344,500 (half of the amounts paid by MZ to the US Parties, for US taxes in respect of income generated by the Israeli Companies in 1998 after deducting $103,000 which were set off by MZ from the quarterly payment of July 2002); (2) $150,000

(MZ's share in the Albany Avenue property). MZ hereby relinquishes any right of tax deduction regarding the donation of the Albany Avenue Property.

4.3   **Representations of MZ.**

MZ hereby represents, warrants, and declares as follows:

4.3.1   MZ has full legal right and authority to enter into and conclude this Agreement and to perform all of its obligations hereunder.

4.3.2   Mayer Zeiler is the duly authorized and irrevocable agent of each of the parties constituting MZ and has full power and authority to (i) execute and perform this Agreement on their behalf, jointly and severally, and (ii) to execute on their behalf, jointly and severally, any agreement, waiver, consent or document of any kind, in connection with this Agreement, at any time in the future; and (iii) to receive any notices, requests, demands, and other communications, and any such communication received by him shall be deemed received by all the parties constituting MZ, jointly and severally.

4.3.3   To the best of his knowledge, he has good and transferable title to the US Shares, free and clear of any mortgage, lien, pledge, charge, security interest, encumbrance, title retention agreement, option, equity or any other claim adverse thereto, directly or indirectly (other than any such mortgage, lien, pledge, charge, security interest, encumbrance, title retention agreement, option, equity or claim which might have been created by or in favor the US Parties).

4.3.4   Flocktex is (directly or indirectly, as specified in Schedule A) the owner of rights in the Flocktex Land and is free and clear of any mortgage, pledge, charge, lien, attachment, encumbrance, option, protected tenancy, caution/warning remark, expropriation remark, or any other third party rights and/or any potential rights and/or any contingent rights, which is not subordinated to the Mortgage as defined hereinafter.

4.4   **Representations of US Parties**

US Parties hereby represent, warrant, and declare as follows:

4.4.1   Each of the US Parties has full legal right and authority to enter into and conclude this Agreement and to perform all of his obligations hereunder.

4.4.2    Each of the US Parties is the duly authorized and irrevocable agent of his spouse an children and has full power and authority to (i) execute and perform this Agreement on their behalf, jointly and severally, and (ii) to execute on their behalf, jointly and severally, any agreement, waiver, consent or document of any kind, in connection with this Agreement, at any time in the future; and (iii) to receive any notices, requests, demands, and other communications, and any such communication received by him shall be deemed received by all the parties constituting the US Parties, jointly and severally.

4.4.3    To the best knowledge of each of the US Parties, it has good and transferable title to the Israeli Shares, free and clear of any mortgage, lien, pledge, charge, security interest, encumbrance, title retention agreement, option, equity or any other claim adverse thereto, directly or indirectly.

## 5.    Events of Default and Acceleration

5.1    In this Section 5 the terms below shall have the meaning assigned to them as follows: "Default Notice" shall mean, in each of the sub-sections below, a notice given by the US Parties, in which the US Parties inform MZ that an Event of Default has occurred.

"Event of Default" shall mean (a) If MZ shall fail to pay to the US Parties any amount due to them from MZ, under this Agreement (or due to them under a Prepayment Notice), in whole or in part, including all interest and accrued interest thereon, upon the date prescribed for payment (including a date prescribed for payment under a Prepayment Notice) and such default was not cured within 90 days from the date on which a Default Notice has been given. It is clarified that notwithstanding the 90 days period to which MZ is entitled in order to cure each Event of Default, MZ shall not be entitled to the 90 days extension period after 5 Events of Defaults have occurred; and/or (b) If any representation made or delivered by MZ to the US Parties under Section 4.3, proves to have been incorrect, inaccurate or untrue in any

material respect when made or delivered, and such default was not cured within 90 days as of the grant of a Default Notice.

5.2     Upon the occurrence of an Event of Default:

5.2.1     The US Parties shall give to MZ a Default Notice;

5.2.2     The Balance shall be accelerated and immediately become due and payable; and

5.2.3     The US Parties shall be entitled, after 90 days as of the delivery of the Default Notice and provided that the Event of Default has not been cured, to exercise any of the Securities in the relevant civil courts according to the applicable Halachic law or Israeli civil law as shall be determined by the Beth Din between the signing and the Closing of this Agreement, without any limitations or conditions and without derogating from any other right or remedy to which the US Parties are entitled, either by law or under this Agreement or otherwise. The US Parties will be entitled to exercise all or any of the Securities at their sole and absolute discretion, at any time, all together or from time to time, in order to cover the Balance and all legal and other expenses in connection to the exercise of the Securities. For the avoidance of doubt and without derogating from any of the provisions herein, it is hereby clarified that the exercise or non-exercise of any of the Securities shall not constitute a waiver of any remedy or claim or Security or Guarantee.

5.2.4     If MZ wishes to contest the very occurrence of an Event of Default, MZ shall address the Beth Din during the 90 days' period from a Default Notice given to MZ by the US Parties, and the issue shall be decided by the Beth Din. The Beth Din shall have the exclusive power to rule as to whether an Event of Default has occurred. If within the 90 day period to which MZ is entitled in order to cure each Event of Default, MZ approaches the Beth Din to forestall foreclosure proceedings, no action may be taken until the Beth din issues its ruling.

6. **Securities and Guarantees**

6.1     As securities for full and punctual performance of (i) the obligations of MZ
~~hereunder and (ii) for MZ's 1/6 (one sixth) share in any US taxes imposed~~
further to a final assessment or settlement on the Parties as individuals in
respect of tax obligations resulting from income generated by the Israeli
Companies till 31/12/1997, and as conditions precedent for the Closing of
this Agreement (in addition to any other actions which are to be taken or
documents to be provided at or prior to Closing), MZ shall provide or cause
the provision of the following:

6.1.1     Upon the closing of this Agreement, a valid first degree,
non-subordinated mortgage, without limitation in amount, over the
Flocktex Land (the "Mortgage"). In connection to the Mortgage,
MZ shall provide to the US Parties, prior to or upon the closing of
this Agreement, inter alia, the following:

6.1.1.1     A representation of Flocktex that (i) Flocktex or De-Lux
Industries Ltd is the owner of rights in the Flocktex Land;
(ii) the Flocktex Land is free and clear of any mortgage,
pledge, charge, lien, attachment, encumbrance, option,
protected tenancy, caution/warning remark, expropriation
remark, or any other third party rights, which is not
subordinated to the Mortgage; (iii) it is aware that the US
Parties entered into this Agreement by relying on this
representation. The representation shall be in the form
attached hereto as **Schedule 6.1.1.1A**. MZ shall also
provide all the necessary evidence to the representation, in
extent and form satisfactory to the US Parties, from the
relevant authorities, as set forth in Schedule 6.1.1.1B;

6.1.1.2     A Deed of Pledge in the form attached hereto as Schedule
6.1.1.2. MZ will provide to the US Parties all the
necessary powers of attorney in order to enable them to
exercise the Mortgage;

6.1.1.3     Evidence of the registration of the Mortgage with all the
relevant authorities, including, without limitation, Land
Authorities,     Development     Authority     (Rashout

Hapitouach), Pledges Registrar and Companies Registrar as set out in Schedule 6.1.1.1B;

6.1.1.4  The approval of the relevant competent court to grant the Mortgage attached hereto as Schedule 6.1.1.4. Such court approval shall not impose any material duties on the US Parties. MZ acknowledges and confirms that he will comply with any terms and conditions, if any, set forth in the court's approval.

6.1.2  A valid first degree, non-subordinated pledge over all the interests of MZ in the US Land, provided that the information regarding the US Land required to implement such pledge is available to MZ. Such pledge shall be implemented within reasonable period from provision of such required information to MZ.

6.2  Notwithstanding anything to the contrary in this Agreement, MZ has the right to mortgage the Flocktex Land and form additional mortgages to the Mortgage, as long as such mortgages will be proprietary subordinated to the Mortgage and provided that such additional mortgages are granted only to unrelated third parties.

6.3  It is clarified that the Mortgage is formed solely for the benefit of the US Parties and for the purposes of this Agreement. Therefore, under no circumstances may it be transferred or assigned by the US Parties nor may it be used by the US Parties in any engagement or business with any third parties as collateral.

7.  Taxes

7.1  Any taxes due, either in Israel or in the US, with regard to or as a result of the transfers of rights in the Israeli Companies shall be borne solely by the US Parties.

7.2  Any taxes due, either in Israel or in the US, with regard to or as a result of the transfer of rights in the US Companies shall be borne solely by MZ.

7.3  Withholding or any other relevant taxes at source arising under any applicable law will be deducted from any amount payable by either party to the extent that the other party fails to provide the required approvals for exemption from any such taxes or deductions, as the case may be. For the

avoidance of doubt it is clarified that such tax withholdings can be deducted by the payer in any possible way, including, without limitation of the foregoing, by means of offsetting the withheld tax from the amounts to which the payee is entitled for.

8. **US Land and other Financial Assets**

   8.1  MZ and all of his family members shall be provided with the following information upon the signing of this Agreement:

   8.1.1  all of his and their interests in real estate, including particulars of all assets and relating valuations relating thereto, in accordance with the ruling of the Beth Din dated March 4 2003.

   8.1.2  A complete accounting of all of his and their interests in real estate, including particulars of all income, expense and distributions relating thereto, in accordance with the ruling of the Beth Din dated March 4 2003.

   8.1.3  all of his and their pension and insurance rights.

   8.1.4  Releases of all personal financial obligations in his name and of any guarantees given by MZ to the US Companies, if any, approved by a legal counsel of the US Companies and any other entities in the US which are held in common interest by MZ and/or his family members and the US Parties. Respectively, MZ shall provide the US Parties, upon signing of this Agreement, with a complete record and release of all personal financial obligations in the US Parties' names and of any guarantees given by the US Parties to or in connection with the Israeli Companies, if any, approved by a legal counsel of the Israeli Companies. The above releases are attached hereto as Schedule 8.1.4. It is clarified that the Israeli Companies hereby waive any guarantees given to them by the US Parties and shall indemnify and hold harmless the US Parties from and against any expense arising from any such guarantee. The US Companies hereby waive any guarantees given to them by MZ Parties and shall indemnify and hold harmless the MZ from and against any expense arising from any such guarantee.

8.2     The information set out above in section 8.1 shall be provided to MZ and the US Parties upon signing of this agreement.

8.3     All monies (including any pension funds, life insurance policies and any other financial assets), if any, due to MZ and his children in respect of the accounts referred to in Clause 8.1 shall be remitted to each of them forthwith upon their written request.

8.4     Either party shall be entitled to initiate to exercise "gud o agud" (Buy Me Buy You) proceedings with respect to the US Land.

9.     Miscellaneous

9.1     (a)     MZ hereby declares and confirms that, other than as set forth in the Mutual Waiver Letter that was signed by the Parties, the US Parties have no personal or any other liability or responsibility whatsoever regarding the Israeli Companies and/or their businesses.

        (b)     The US Parties hereby declare and confirm that, other than as set forth in the Mutual Waiver Letter that was signed by the Parties, neither MZ nor any of his family members have any personal or any other liability or responsibility of any nature whatsoever regarding the US Companies and/or their businesses or any other business or entities in the US which are held in common interest by MZ and the US Parties.

        (c)     Closing: Closing of this Agreement shall take place at the L Gornitzky offices in Tel Aviv, on September 10 2003 at 16:00 or at such other time and place as the parties shall mutually agree upon in writing. The Closing shall be conducted according to the attached Closing Protocol.

9.2     Resignation

        (a)     MZ has resigned effective as of the Effective Date from any position which he holds in any of the US Companies and shall do all such things and perform such acts as may be necessary to perfect any such resignations.

        (b)     The US Parties have resigned effective as of the Effective Date from any position which any of them holds in any of the Israeli

Companies and each of them shall do all such things and perform all such acts as may be necessary to perfect any such resignations.

9.3     Entire Agreement

This Agreement contains the entire contractual understanding regarding the transfer of shares and rights in the Israeli Companies and the US Companies between the Parties, and supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. Notwithstanding the aforesaid, it is clarified that this Agreement does not exhaust any claim and/or demand of MZ that may arise as a result of the information reported to MZ pursuant to Section 8 of this Agreement.

9.4     No Waiver

Any delay, omission or failure by either Party to exercise any of its rights hereunder shall not be construed as a waiver of such rights, nor shall any such delay, omission or failure preclude exercise of such rights at any later time.

9.5     Law, Jurisdiction and Arbitration

Without derogating from the rights of the US Parties under Section 5.2.3 above to exercise any of the Securities in the relevant civil courts according to civil law or the Halachic law as shall be determined by the Beth Din between the signing and the Closing of this Agreement, this Agreement shall be governed and construed pursuant to the Torah law, and the Beth Din shall have exclusive jurisdiction in connection herewith.

9.6     Other than MZ's obligations under sections 2.2 and the rights retained under the Mutual Waiver Letter signed between the parties on the date hereof, the US Parties have no further claims of any kind or nature regarding their shares, equity and interests in the Israeli Companies.

9.7     Other than his rights to receive by a way of set-off payments under Section 4.2 and the rights retained under the Mutual Waiver Letter signed between the parties on the date hereof, MZ has no further claims of any kind or nature regarding his shares, equity and interests in the US Companies.

9.8     MZ and the U.S. Parties warrant that each one of them is fully authorized to be obligated under this Agreement and in any other matter with regard to the shares in the Israeli Companies and the US Companies on behalf of the respective Party's spouse and children and their spouses.

9.9 **Expenses**

Each party shall bear its own expenses in connection to the preparation of this Agreement.

9.10 **Schedules**

All schedules, annexes and exhibits to this Agreement form an integral part hereof.

9.11 **Notices**

All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed duly given when delivered by hand or fax with confirmed receipt or mailed by private courier or registered mail. Each notice, request or other communication shall be effective (i) if given by fax, when such fax is transmitted to the fax number specified herein and the appropriate answerback is received; or (ii) if given by any other means, when delivered at the address specified herein.

9.12 All notices, requests, demands or other communications shall be sent to the following addresses, or to such other address (or fax number) as each Party may hereafter specify in writing to the other Parties hereto:

If to MZ:

Mr. M. Zeiler

c/o Flocktex Industries Ltd,

Industrial Zone, Kiryat Malachi 70900, Israel

Fax: +972-8-8504643.

With a copy to:

Mr. Yaakov Neeman, Adv.

Herzog, Fox & Neeman

Asia House, 4 Weizman St.

Tel-Aviv 64239

Fax: 03-6966464

Any notices, requests, demands and other communications given to MZ or Herzog, Fox & Neeman shall effective and be deemed to have been given to each of the parties constituting MZ.

If to the US Parties:

Mr. J. Pinson

c/o Deitsch Plastic Co., Inc.

14 Farwell St., West Haven CT, U.S.A.

Fax: +1-203-9334763

With a copy to:

Mr. Pinchas Rubin, Adv.

I. Gornitzky & Co.

Zion Building, 45 Rothschild Blvd.

Tel-Aviv 61291

Fax: 03-5605555

Any notices, requests, demands and other communications given to any of the US Parties or to I. Gornitzky & Co. shall effective and be deemed to have been given to each of the parties constituting the US Parties.

9.13   Material Terms and Conditions.

The Parties agree that the terms and conditions of Sections 2, 3, 4, 5, 6, 7 and 8 of this Agreement, are material terms and conditions of the Agreement. Without derogating from any provision or remedy under the Agreement, it is hereby emphasized that without derogating from MZ and the US Parties rights under Section 5.1, any breach or partial breach of the above Sections, including, without limitation, any breach with respect to the time and/or date on which any of the acts and undertakings therein are due, which subject to the provisions of Section 5.1 was not cured within 90 days of the date in which it was due, shall constitute a material breach of the Agreement. Subject to the provisions of Section 5.1, it is clarified that any breach of this Agreement that was cured within 90 days of the date it was due will not constitute a material breach of this Agreement.

9.14   Process Agent

MZ hereby irrevocably designates and appoints Herzog, Fox & Neeman of Asia House, 4 Weizman St., Tel-Aviv 64239,Fax: 03-6966464 , (hereinafter referred to as "MZ's Process Agent") to receive for it and on its behalf, service of process with respect to any proceedings arising out of or in

connection with this agreement and agrees that failure of MZ's Process Agent to give notice of such service or process to MZ shall not impair or affect the validity of such service or any decision based thereon.

9.15   The US Parties hereby irrevocably designate and appoint I. Gornitzky & Co. of Zion Building, 45 Rothschild Blvd., Tel-Aviv 61291, Fax: 03-5606555 (hereinafter referred to as the "US Parties' Process Agent") to receive for them and on their behalf, service of process with respect to any proceedings arising out of or in connection with this agreement and agree that failure of the US Parties' Process Agent to give notice of such service or process to the US Parties shall not impair or affect the validity of such service or any decision based thereon.

9.16   Section Headings.

The section headings in this Agreement are for convenience purposes only and shall not be used in order to construe this Agreement.

9.17   Counterparts.

This Agreement may be executed by the Parties in separate counterparts and all such counterparts shall together constitute one and same instrument.

9.18   Mutual Waiver of Parties

9.18.1   Subject to the provisions of this Agreement, the US Parties shall not have any claims against or demands from MZ for any debts and/or other obligations of the US Companies, of any nature whatsoever whether present or future.

9.18.2   Subject to the provisions of this Agreement, the MZ shall not have any claims against or demands from US Parties for any debts and/or other obligations of the Israeli Companies, of any nature whatsoever whether present or future.

9.19   Confidentiality

All matters set out in and referred to in this Agreement shall be regarded as confidential information and shall not be disclosed to any third party without the prior written consent of the other Party, unless the disclosure of such information is required under any applicable law or by any competent authority.

[Intentionally Left Blank]

Page 18 of 18

IN WITNESS WHEREOF, this Agreement has been signed and delivered by the parties
hereto as of the dated first above written:

Mordechai Deitsch

Mayer Zeller

Jacob Pinson

Joseph Deitsch

Rachel Sandman

We the undersigned, agree to the provisions of the above agreement, insofar as they apply
to us:

Flocktex Industries Ltd.: _____

By: _____

De-Lux Industries Ltd.: _____

By: _____

Achim Deitsch Textile Industries Ltd.: _____

By: _____

U.S. Companies: _____   DEITSCH PLASTIC CO., INC   _____ IVERSH INC.
By: _____            DEITSCH PLASTIC PARTNERS
                       DEITSCH INTERNATIONAL SALES CORP

Page 18 of 18

IN WITNESS WHEREOF, this Agreement has been signed and delivered by the parties hereto as of the dated first above written:

_____
Mayer Zeger

Mordechai Deitsch

_____
Joseph Deitsch

Jacob Finson

_____
Rachel Sandman

We the undersigned, agree to the provisions of the above agreement, insofar as they apply to us:

Flocktex Industries Ltd.: _____
By: _____  FLOCKTEX INDUSTRIES LTD.

De-Lux Industries Ltd.: _____
By: _____  DE LUXE INDUSTRIES LTD.

Achim Deitsch Textile Industries Ltd.: _____
By: _____  ACHIM DEITSCH
                       TEXTILE INDUSTRIES LTD

U.S. Companies: _____
By: _____



## Schedule C (US Land)

1. O.P.A.L.P.
2. A.T.C. Partnership
3. Essdee Realty
4. Shalvah partnership
5. Orange Investment Co.
6. Willowbrook Venture Co.

בס"ד

בית הכנסת קהילת מאנסי
COMMUNITY SYNAGOGUE OF MONSEY
CLOVERDALE LANE • MONSEY, N.Y. 10952

DR. MOSHE D. TENDLER
RAV

STUDY: 4 CLOVERDALE LANE
MONSEY, N.Y. 10952
TEL 914-356-3436

[illegible]
25 april 04

Dear Rav Shmuel Chaim [illegible]

This is to record the contents of the "voice mail" message I left on your phone on Friday (Erev Shabbos) [illegible] 23, 04

My decision to withdraw as a member of our Beth Din was precipitated by three occurrences:

(1) Mr. [illegible] letter confirming that he has been less than truthful in his relationship with our Beth Din

(2) Rav Bogomilsky's continued failure to maintain the impartiality of a Dayan as exemplified in his letter of ([illegible]) april 19, 04. He has throughout this protracted trial expressed animosity to Mr. Zeiler and assumed the role of attorney for the New Haven partners

(3) Your failure to take resolute action to provide Mr. [illegible] — the legal [illegible] — (agent with full power of attorney) of Mr. Zeiler with the real estate records that are rightfully, legally his to examine. This failure is exemplified by your disregard of my repeated requests that you convene our Beth Din to rule once again on the issue of the real-estate records.

I am not withdrawing because I cannot adjudicate this case of law. I am doing so because of the law of [illegible] i.e. I am convinced that there has been an attempt to withhold information critical to our case and that one of the arbitrators (judges) was [illegible] biased.

[illegible]

Moshe David Tendler

16 Iyar, 5764
May 7, 2004

Re: Deitsch / Zeiler

Please be informed that in accordance with the *shtar beirurin* signed on 10 Elul 5759, which is a binding arbitration agreement, the decision of the *Bais Din* is to be rendered *al pi hachlatas rov ha-dayyanim*, in accordance with the decision of the majority of the members of the *Bais Din*.

Thus, in the event of the resignation of one of the members of the *Bais Din*, a decision may be issued by the remaining two members. Accordingly, the *Bais Din* retains jurisdiction in the matter of *Deitsch vs. Zeiler* with regard to all outstanding issues and will issue rulings in accordance with the terms of the *shtar beirurin*.

It is of course superfluous to add that recourse to secular judicial authorities without prior leave of the Bais Din is, under any circumstances, a grave violation of *halacha*.

Rav Moshe Bogomilsky

Rav Shmuel C. Gurwitz

Case 1:04-cv-03602-SLT-KAM   Document 1   Filed 08/19/04   Page 47 of 72 PageID #: 47

27 Sivan, 5764
June 16, 2004

Re: Deitsch / Zeiler

The *Bais Din* has reviewed the claim of December 4, 2003 by the American
shareholders for payment of $794,145.16 for reimbursement of taxes paid by
the American shareholders to the US government in November 2002 and
November 2003. The American shareholders presented official transcripts of
the US shareholders' accounts with the IRS and correspondence between the
US shareholders and the IRS. The *Bais Din* has reviewed Mr. Zeiler's
counter-arguments as presented by Mr. Kupfer's letter to the Bais Din dated
April 20, 2004, as well as the correspondence between the Israeli attorneys
for both parties.

The *Bais Din* has confirmed that the total amount paid by the American
shareholders to the US tax authorities in November 2002 and November
2003 is $4,860,007.84. This does not include the payment of $525,040.00 of
April 9, 2004, which was not included in the claim of December 4, 2003. In
addition, there is an unpaid bill, part of which is being contested.

According to the terms of the *Bais Din's* decisions, Mr. Zeiler is liable for
his share of those taxes. The *Bais Din* therefore confirms the claim of the
American shareholders for $794,145.16.

In their correspondence, Mr. Zeiler's attorneys raised the issue of passive tax
losses. To date, the American shareholders have not received any benefit
from those losses. According to the evidence presented, the potential benefit
from passive tax losses is less than the outstanding amount owed to the IRS.
Any future benefits resulting from passive tax losses will be considered in
conjunction with the remaining tax payments ($525,040.00 plus the unpaid
bill).

As per the *psak* of June 24, 2001/ 3 Tammuz 5761 and reiterated in the *psak* of May 14, 2002 / 3 Sivan 5762, the Israeli properties serve as security for the Israeli share of the tax obligations. Thus, in the event of nonpayment by Mr. Zeiler of the Israeli share of the tax obligations, the American shareholders can initiate foreclosure proceedings.

Rav Moshe Bogomilsky

Rav Shmuel C. Gurwitz

בס״ד

כ״ב אלול תשנ״ט

## Preface

The basic outline for this agreement including the evaluation of the various assets of the partnership was presented to us in written communication and reaffirmed by both "sides" numerous times during several days of deliberations.

This Beth Din concurs that a dissolution of the partnership and a division of the assets is essential to restore a harmonious relationship between the litigants who are close family members. We also note for the record that the Patriarch of the family, Mr. David Deitsch, שליט״א, is desirous of repairing the family bonds that have been frayed during these last years of friction.

During the days of intensive deliberation with Mr. Meyer Zeller (Israeli companies Flootex and Achim Deitsch Textile Industries) and the "American group", Deitsch Plastics and Related Industries represented by Messrs. Mordechai and Joseph Deitsch; Jacob Pinson; Rachel Sandman (represented by her husband Josh Sandman) we were able to dissect the points of disagreement from the basic framework in which there was full concurrence.

These points were discussed with both the "American" and the "Israel" partners and their advisors, and the Beth Din was authorized once again to adjudicate these points of dispute (Kaboias Kinyan).



We, Rabbonim, Moshe D. Tendler, Moshe Bogomilsky, and Shmuel C. Gurwitz met as a duly authorized Beth Din ("The Beth Din") selected by the following litigants: Mr. Meyer Zeiler, for himself and representing the Israeli companies Floctex and Achim Deitsch (to be known as "The Israeli side"), and Mordechai Deitsch, Joseph Deitsch, Jacob, Pinson, and Rachel Sandman (represented by her husband) for themselves and representing the USA company Deitsch Plastics and Related Industries (to be known as "The American side"). Both sides are currently equal partners in these Israeli and American companies. Whereas both sides agreed to a dissolution of these partnership, the Beth Din was authorized to determine the terms of the division of their joint assets.

The Beth Din has arrived at the following decision:

I. The American and Israeli companies will be separated by an exchange of all shares of their respective companies in an "arms length" transaction effectuated by a halachic "kinyan" in the presence of Beth Din, no later than September 14, 1999. These shares will be held in Escrow until all the financial obligations are satisfied. If the shares of David Deitsch are to be transferred he should be represented as well.

II. All accumulated profits of all companies until December 31, 1997 will be divided as follows: The Israel side will pay to the "American" stockholders two thirds (2/3) of the accumulated profits of Achim Deitsch Textile Industries. The profits of Floctex (Israel) and Deitsch Plastics and Related Industries (American) until cut-off date of December 31, 1997, will be shared equally by all former partners.

III. Purchase price of shares:

A. The Israel side will pay $8 million for the shares of the "Israeli" companies owned by the "American" group plus a rate of profit equal to Bank Rate Interest for the period of time from January 1, 1998 until the finalizing of the decision of the Beth Din when the Kinyan will be made.

B. Mr. David Deitsch's shares are not included in this purchase price of $8 million.

C. These monies will be paid by the Israeli side in equal payments (not commissions) until the year תשע"א [2011] with an "interest rate" (properly formulated in accord with Torah Law (Heter Iska) governing business

1

transactions) of Prime adjusted quarterly (as recorded in the Wall Street Journal). Beth Din will prepare the text of the Heter Iska.

    D. The Israel side has the option to prepay.

IV.   A. Mr. Zeller is to return to the "American" group monies received as salary and benefits for the time period January 1, 1998 to the present without any interest.

    B. Likewise, he is to reimburse the "American" group for any taxes paid by them for profits earned by the Israeli entities but not received by them for the same period above.

    C. "Shmulek's" salary and benefits package paid by the American group should also be reimbursed by the Israeli side for the same period without interest.

V.   A. Any tax obligations imposed by the U.S. IRS or by the Israeli tax authority for company activities until December 31, 1997 will be shared equally by all former partners.

    B. Both sides are urged to cooperate fully to minimize the tax burdens incurred by this transaction.

VI.  All requests for confirmation of financial records necessary to obtain accurate dollar amounts, will be satisfied by the companies' licensed accountants. Exact dollar amounts available for distribution from Floctex and Achim Deitsch and from Deitsch Plastics and Related Industries will be confirmed by consultation between accounting firms of Weinstein/Anastasia and Yitzchok Timor. Final data must be available to the litigants no later than September 14, 1999. Any disagreements between the parties will be decided by Beth Din.

VII. The preparation of all legal documentation pertaining to the dissolution of the partnership must be completed prior to October 15, 1999.

VIII. Monies from shareholder accounts not in dispute, should be released immediately. Additional monies due after the verification requests have been satisfied, should also be paid within 90 days.

IX. Mr. Zeiler should be provided with a full and accurate listing of:

    A. Real Estate investments in full detail.

2

Note:  The value of Real Estate shares cannot be used to offset the financial obligations under this Psak Din without mutual consent.

B.  His pension and insurance.

C.  listing of all his and his children's money accounts.

D.  Monies due Mr. Zeiler and his children should be transferred to them within 90 days, if they so desire.

E.  A complete record of all financial obligations (if any) bearing his name should be provided immediately.

X.      A.  The covenants agreed to by both "sides" in section "C" of the term sheet (p. 3) are added to this ruling of Beth Din.

B.  The litigants are strongly proscribed from instituting any legal actions without written permission of this Beth Din.  Any ambiguities in our ruling can be clarified only by the undersigned Dayanim meeting as a Beth Din.

Rav Moshe Dovid Tendler

Rav Moshe Bogomilsky

Rav Shmuel Chaim Gurwitz

3

SC GURWITZ          FAX NO. : 7185924498.          Sep. 03 )2003 06:15PM  P1

---

<u>Note:</u>  The value of Real Estate shares cannot be used to offset the financial obligations under this Psak Din without mutual consent.

    B.  His pension and insurance.

    C.  listing of all his and his children's money accounts.

    D.  Monies due Mr. Zeiler and his children should be transferred to them within 90 days, if they so desire.

    E.  A complete record of all financial obligations (if any) bearing his name should be provided immediately.

X.    A.  The covenants agreed to by both "sides" in section "C" of the term sheet (p. 3) are added to this ruling of Beth Din.

    B.  The litigants are strongly proscribed from instituting any legal actions without written permission of this Beth Din. Any ambiguities in our ruling can be clarified only by the undersigned Dayanim meeting as a Beth Din.

_Rav Moshe Dovid Tendler_
Rav Moshe Dovid Tendler

Rav Moshe Bogomilsky

Rav Shmuel Chaim Burwitz

3

30 Sivan, 5760
July 3, 2000

The following are rulings of the Beis Din concerning the selling of the shares by M. Zeiler to the American shareholders (M. Deitsch, J. Deitsch, J. Pinson, and R. Sandman) in Deitsch Plastics and affiliated enterprises, and the American shareholders selling of their shares in Flocktex and Achim Enterprises in Israel to M. Zeiler.

These rulings serve as an addendum to the previous ruling of the Beis Din issued in September 1999. All clauses of the September 1999 ruling remain in effect.

1) From the original shareholders' account of $15,038,000 (per Timor) a final distribution of $4,019,000 is due to the American shareholders plus an amount equal to interest per bank rate from January 1, 1998, at 5% till June 30, 2000 = $502,375

2) On the distribution of $5,383,000 made in August 1999 the American parties are due an amount equal to interest on $4,306,400 per bank rate from January 1, 1998, at 5% until August 31, 1999 = $358,700.

3) A  The American shareholders are due from Flocktex earnings: $1,644,003.

   B  The American shareholders are due from Achim earnings:    $2,517,098.
      Sub Total A & B:                                          $4,161,101
      Less Discount for operating capital                       $500,000
      Total                                                     $3,661,101

4) A  Zeiler must reimburse the American shareholders for all taxes, including state tax, that they paid for 1998 income which they did not receive. This amount is $826,066, less $920 which was paid by Mr. David Deitsch. Any benefit received by the American shareholders by the payment of state taxes (and federal taxes, if applicable) is to be deducted from this amount. The final amount due from Zeiler for reimbursement of taxes will be established by Mr. Abraham Roth/Mr. A. Ritter.

   B. Zeiler is entitled to a reimbursement from the American shareholders of $53,966 (4/5 of $67,457) for taxes paid on income tax received from Connecticut during 1998.

5) Zeiler is to be reimbursed from the American shareholders $160,000 (4/5 of $200,000) without interest, as compensation for the check of $200,000 which he claims he never received

6) Zeiler is entitled to receive $100,000, without interest, from the American shareholders as payment in full of his share of the $238,773 profit on sales of merchandise Zeiler purchased through them.

2

7) Three quarterly payments are already due on $8,000,000 purchase price. Each payment is $181,818 x 3 = $545,454. In addition, an amount equal to interest per bank rate of 5% is due on the $8,000,000 for the period January 1, 1998 , September, 1999. This amount is $666,400. Starting July 1, 2000 the interest is to be calculated at the prime rate with a *heter iska* agreement.

8) As a compensation (*peshara*) for Zeiler's claims related to interest, the interest on the $8,000,000 purchase price from September 23, 1999 to June 30, 2000 has been waived. In addition, the income from the profits of Achim and Flocktex ( see #3) have been calculated without interest.

9) $34,400 (4/5 of $43,000) is due Zeiler as per confirmation by Tony at previous meeting in Mr. Roth's office.

10) American parties are entitled to refund of blocked loans without interest at end of benefit period, per letter of approval of the investment center.

11) As a means of *peshara*, American shareholders are entitled to the retained earnings in Connecticut prior to becoming an S Corporation. Zeiler is entitled to the retained earnings in bonus shares, shareholders' equity, and the money allotted above for operating capital (see #3).

12) The American shareholders are entitled to 4/6 of shareholders' money in Barclay's Bank of England and all other bank accounts that are not included in Timor's $15,038,000 shareholders' account with all accumulated interest.

13) A Connecticut originally debited Zeiler $420,790.82 for salaries since 1998. He is entitled to credit of $119,636.04 (gross) for salary checks held, and other adjustments of $506.88. Thus, the subtotal debit is $300,647.90.

   B. For 1998, 1999, and 2000 Connecticut paid for Zeiler family insurance premiums amounting to $156,803.22. Thus, the total debit should be $450,118 (an additional $29,288, 4/5 of $36,660).

   C. If there are any tax benefits to the American shareholders, 4/5 of the benefits should accrue to Zeiler.

14) Zeiler is entitled to an accounting and payment of all income due him from Greendeer Real Estate and Willowbrook Venture Company as well as any other, if any, real estate incomes. He can deduct $26,889.42 for Greendeer and $58,082.20 for Willowbrook plus additional accumulation, if any.

15) Zeiler is to receive $12,967 additional to original figure stated by Tony from vested balance in profit sharing plan 12/98.

16) The moneys owed by Zeiler to the American shareholders, as per this ruling, are to be paid one half by July 20, 2000 and the remainder by August 4, 2000. Any amount unpaid by August 4, 2000 shall be deemed an investment in the Israeli companies as of July 5, 2000 and earn an assumed prime rate, as per the *heter iska*.

17) A legal contract of the sale of the above-mentioned companies should be made. Any unresolved disputes regarding the contract should be presented to Beis Din for ruling. Payment due, as per #16, is not contingent upon executing a contract and should not be withheld pending a contract. However, the purchase price payments (see #7) can be withheld until the contract is finalized. If this process is delayed past August 4, 2000, the payments due shall be escrowed with the Beis Din.

18) The parties should cooperate to minimize the tax consequences.

19) The American parties are waiving their rights to review the books of Achim, Floektex, and shareholders' accounts upon satisfaction of this ruling.

20) Any equity of David Deitsch in the above-mentioned entities is not a matter for the jurisdiction of this Beis Din.

21) Accumulated profits of Achim Deitsch, in the amount of $2,267.098 may be paid in commission.

Rav Moshe Dovid Tendler

Rav Moshe Bogomilsky

Rav Shmuel Chaim Gurwitz

[a] in lieu of the American party's share of profits in the Israeli companies for 1998-99

3 Tammuz, 5760
July 6, 2000

~~The following clauses are to serve as an addendum to the ruling of the Beis Din in the matter~~
of Deitsch/ Zeiler dated 30 Sivan 5760, July 3, 2000:

1) Whereas the ruling of July 3, 2000 was not released immediately, clauses #16 and #17
are hereby amended to reflect a change in dates as follows:

    16) The moneys owed by Zeiler to the American shareholders, as per this ruling, are
    to be paid one half by July 21, 2000 and the remainder by August 5, 2000. Any
    amount unpaid by August 5, 2000 shall be deemed an investment in the Israeli
    companies as of July 6, 2000 and earn an assumed prime rate, as per the *heter iska*.

    17) A legal contract of the sale of the above-mentioned companies should be made.
    Any unresolved disputes regarding the contract should be presented to Beis Din for
    ruling. Payment due, as per #16, is not contingent upon executing a contract and
    should not be withheld pending a contract. However, the purchase price payments
    (see #7) can be withheld until the contract is finalized. If this process is delayed past
    August 5, 2000, the payments due shall be escrowed with the Beis Din.

2) Zeiler has informed the Beis Din, through Rav Tendler, that he understands and accepts
the terms of the *heter iska*'s and will formally execute the *heter iska*'a by Monday, July 10,
2000.

3) In the event that the Beis Din makes any adjustment to the amount owed by Zeiler to the
American shareholders, that amount of the *heter iska* shall be automatically adjusted by the
same amount. No money ordered paid in the July 3, 2000 ruling may be withheld in the
anticipation of such an adjustment.

4) In the event that Zeiler does not comply with clause #16 as modified above, the Beis Din
must be consulted regarding the return on the investment defined in clause #16.

5) Upon satisfaction of the Beis Din ruling, the American shareholders are to provide Zeiler
with a complete accounting of his real estate investments, with documentation for the past
five years.

                               s- file
                        Rav Moshe Dovid Tendler

                        Rav Mutha Bogomilsky

                        Rav Shmuel Chaim Gutwirth

3 Tammuz, 5761
June 24, 2001

Re: Deitsch/Zeiler

The following decisions have been reached by the *Bais Din:*

1. The security for the amount due by M. Zeiler to the
American shareholders for the purchase of shares in
the Israeli companies as per the *psak* of July 3, 2000
and the corresponding *heter iska* shall be the Israeli
properties and M. Zeiler's share in the American real
estate holdings.

2. As per the *psak* of September 1999, any tax
obligations imposed by the US IRS or the Israeli tax
authorities on any of the parties for earnings generated
by the American and Israeli companies shall be shared
equally by all parties. Copies of any such rulings from
the US IRS or the Israeli tax authorities should be
provided to both sides. The security outlined in
paragraph 1 shall also serve as security for the Israeli
share of the tax obligations.

3. The American shareholders' claim of an additional
$430,000 for the amended retained earnings is
rejected.

4. It was not the intention of the Bais Din in paragraph
21 of the July 3, 2000 *psak* concerning making
payment as commission to change any past
procedures. M. Zeiler has the right to pay the amount
of $2,267,098 mentioned in the July 3, 2000 *psak* as
commissions, provided no new expenses or
obligations are incurred by the American shareholders.

5. Any issues that remain unresolved in the writing of the contract should be submitted to the *Bais Din* for a ruling. All such submissions must be made before July 30, 2001.

6. M. Zeiler is entitled to a refund from the American shareholders

$103,000 for 1998 taxes
  44,000 for 1999 taxes
                    (4/5ths of $55,000)

   Total:  $147,000

7. Zeiler's claim for additional credit for taxes paid as per paragraph 4 of the July 3, 2000 *psak* will be decided after all documentation has been reviewed. The *Bais Din* has yet to rule on the issue of the donated Shalva real estate.

8 Zeiler should immediately be given all the real estate information as indicated in the previous *psakim*.

3 Sivan, 5762
May 14, 2002

Re: Deitsch/Zeiler

The following additional decisions have been reached:

1. The effective date of the sale of the shares of the American and Israeli
   companies is 11 Tishrei, 5760, September 21, 1999. The sale is
   irrevocable, provided that the terms outlined in the *Bais Din*'s
   decisions are implemented. Although both parties were partners in all
   the companies until that date, and were therefore entitled to their share
   of profits of all the companies, the American shareholders have
   waived their rights to their share of the 1998 and 1999 profits of the
   Israeli companies to the benefit of Mr. Zeiler; similarly, Mr. Zeiler has
   waived his rights to his share of the 1998 and 1999 profits of the
   American companies to the benefit of the American shareholders.

2. A fully binding mortgage for the Flocktex property as collateral
   should be provided as outlined in Paragraph 1 of the *Bais Din* ruling
   of 3 Tammuz 5761/ June 24 , 2001:

   > The security for the amount due by M. Zeiler to
   > the American shareholders for the purchase of
   > shares in the Israeli companies as per the *psak* of
   > July 3, 2000 and the corresponding *heter iska*
   > shall be the Israeli properties and M. Zeiler's share
   > in the American real estate holdings.

   In the case of devaluation of that property, additional collateral need
   not be provided. If the parties cannot agree on the wording of the
   mortgage on the Israeli properties, a third lawyer should be chosen by
   both parties and should decide this issue.

3. Secondary mortgages on the Israeli properties can only be granted to
   unrelated third parties.

4. Mr. Zeiler can prepay the amount owed for the purchase of the Israeli
   companies with a minimum amount of $250,000 at any time.

5. No deductions can be made from the quarterly payments due (set-off)
   for claims on the American shareholders unless such obligations of
   the American shareholders have been confirmed previously by the

transferred to Mr. Rubin on behalf of the American shareholders within fifteen days of the date of this *psak*. Mr. Rubin will be responsible for payment of taxes on this amount to the Israeli authorities.

11. Upon completion of the contract, the American shareholders shall repay Mr. Zeiler one-half of the amount that Mr. Zeiler paid to the American shareholders for American taxes on the income generated by the Israeli companies for 1998.

12. Mr. Zeiler is awarded the sum of $150,000 for his share in the Albany Avenue property. The American shareholders are entitled to the entire tax deduction for the donation of this property. Mr. Zeiler should relinquish his rights to this deduction.

13. Mr. Zeiler's claims regarding his children's loans and the $419,000 adjustment, to the extent that they were not included in previous rulings of the *Bais Din*, have been rejected.

14. Mr. Zeiler, or his representative, has the right to review the books of the American real estate partnerships. Mr. Roth should be present at this review, which should take place within thirty days of the date of this *psak*. The *Bais Din* will have the final decision regarding the adequacy of the information provided. The option of *gud o agud* may be exercised by either party, as granted by *halacha*.


_____

Rav Moshe D. Tendler


_____

Rav Moshe Bogomilsky


_____

Rav Shmuel C. Gurwitz

transferred to Mr. Rubin on behalf of the American shareholders within fifteen days of the date of this *psak*. Mr. Rubin will be responsible for payment of taxes on this amount to the Israeli authorities.

1. Upon completion of the contract, the American shareholders shall repay Mr. Zeiler one-half of the amount that Mr. Zeiler paid to the American shareholders for American taxes on the income generated by the Israeli companies for 1998.

2. Mr. Zeiler is awarded the sum of $150,000 for his share in the Albany Avenue property. The American shareholders are entitled to the entire tax deduction for the donation of this property. Mr. Zeiler should relinquish his rights to this deduction.

3. Mr. Zeiler's claims regarding his children's loans and the $419,000 adjustment, to the extent that they were not included in previous rulings of the *Bais Din*, have been rejected.

4. Mr. Zeiler, or his representative, has the right to review the books of the American real estate partnerships. Mr. Roth should be present at this review, which should take place within thirty days of the date of this *psak*. The *Bais Din* will have the final decision regarding the adequacy of the information provided. The option of *gud o agud* may be exercised by either party, as granted by *halacha*.

Rav Moshe D. Tendler

Rav Moshe Bogomilsky

Rav Shmuel C. Gurwitz

30 Adar 1, 5763
March 4 , 2003

Re: Deitsch / Zeiler

In response to the parties' request for clarification from the *Bais Din*:

1) The psak of 3 Sivan 5762/May 14. 2002 (paragraph 11) reads:

Upon completion of the contract, the American shareholders shall repay Mr. Zeiler one-half of the amount that Mr. Zeiler paid to the American shareholders for American taxes on the income generated by the Israeli companies for 1998.

Since $103,000 of the taxes had already been awarded to Mayer Zeiler as of 3 Tammuz, 5761/June 24, 2001, the amount under consideration was $792,000 less $103,000, which is $689,000. One-half of this amount is, therefore, $344,500.

2) Mr. Roth's directives regarding the real estate issues should be followed, as per attached letter. All materials provided in response to the questions raised by Mr. Zeiler in his letter of February 10, 2003, should be sent to Mr. Roth, who will consult with the accountants and advise the *Bais Din* regarding the adequacy of the information received. Under no circumstances should the real estate issues be linked to the signing of the contract.

3) As *Beis Din* has ruled on 3 Tammuz, 5761/June 24, 2001, Mr. Zeiler must provide a fully binding mortgage for the Flocktex property as collateral. However, the request of the American shareholders to see the drafts of the petitions that Mr. Zeiler will submit to court regarding the lien and mortgage on the Flocktex land is denied.

4) The peak of 3 Cheshvan 5763/October 9, 2002 reads:

The peak of May 14, 2002 (paragraphs 6-7) reads:

Failure to remit required payments shall be deemed an event of default after 90 days. A default interest rate is not unacceptable al pi halacha.

Upon default, foreclosure proceedings can be initiated by the American shareholders in the Israeli courts without prior authorization of the Bais Din. In the event that Mr. Zeiler contests his payment obligation the nature of his obligation must be decided by the Bais Din.

This ruling is very clear.
Based on the above, absent any directive to the contrary from the Bais Din, the American shareholders can institute foreclosure proceedings after the 90 day period, without explicit authorization of the Bais Din. However, if Mr. Zeiler has a specific reason for non-payment, he can raise this matter with the Bais Din and the Bais Din has the right to forestall foreclosure proceedings.

If, within those 90 days, Mr. Zeiler approaches the Bais Din to forestall foreclosure, no action may be taken until Bais Din issues its ruling.

This process has dragged on too long. It is the opinion of the Bais Din that all substantive matters have been resolved and that a contract should be signed within seven days.

_____

Rav Moshe D. Tendler

_____

Rav Moshe Bogomilsky

_____

Rav Shmuel C. Gurwitz

27 Nisan, 5763
April 28, 2003

Re: Deitsch / Zeller

The *Bais Din* has ruled that the sale of the American shareholders' interest in
the Israeli companies is contingent upon a signed contract between the
parties. All disputed issues pertaining to the contract that were presented to
the *Bais Din* have been addressed by the *Bais Din*. Therefore, the *Bais Din*
hereby rules:

1. A final contract must be signed by both parties no later than 9 Iyar,
   5763 / May 11, 2003.

2. In the event that a contract is not signed by this date, the proposed sale
   shall be declared void and the shares held in escrow by the *Bais Din*
   will be returned to their original owners.

We reiterate the *psak* of 30 Adar I / March 4:

> Mr. Roth's directives regarding the real estate issues should be followed, as per attached letter. All
> materials provided in response to the questions raised by Mr. Zeller in his letter of February 10,
> 2003, should be sent to Mr. Roth, who will consult with the accountants and advise the *Bais Din*
> regarding the adequacy of the information received. Under no circumstances should the real estate
> issues be linked to the signing of the contract.

This ruling shall not limit the *Bais Din* from issuing, and shall not derogate
from, any other additional and/or further rulings the *Bais Din* may issue.

see attached

Rav Moshe D. Tendler

Rav Moshe Bogomilsky

Rav Shmuel C. Gurwitz



[illegible]
COMMUNITY SYNAGOGUE OF MONSEY
CLOVERDALE LANE • MONSEY, N.Y. 10952

DR. MOSHE D. TENDLER
RAV

STUDY: 4 CLOVERDALE LANE
MONSEY, N.Y. 10952
TEL: 914-356-7456

[illegible]

Dear Rav [illegible]

During this protracted דין תורה
I have tried to maintain collegiality and respect for all participants. Indeed I have learned to respect your contributions to our deliberations.

However, your failure to respond with resolute action to the 2 year delay in providing the real-estate records rightfully requested by Mr. Seiler has been a ongoing source of bewilderment to me, more so when deadline after deadline passed without your applying the full authority of our בי"ד to force the [illegible] partners to respond to the oft repeated orders of our בי"ד — ? ? ?

The most recent attempt to link this essential component of the דין תורה with the David Deitsch issue almost convinced me that you were in collusion with the N-H partners to withhold this information from Mr. Seiler — information that he is legally entitled to receive.

The enclosed letter to Mr. Roth is self explanatory of my frustration as is my inability to get you to arrange a בי"ד date where all parties can confront each other.

I am advising Mr. Seiler that דין תורה or not he may seek redress in the secular courts, limited to legal action to obtain access to all records related to the real estate investments of the partnership.

With deep regret,

Moshe David Tendler

27 Shevat, 5764
February 18, 2004

Re: Deitsch / Zeiler

The *Bais Din* issues the following ruling:
The life insurance policies of M. Zeiler are to be transferred to him without
any payment. This transfer is to be treated as a taxable distribution to M.
Zeiler.

*Moshe David Tendle*

Rav Moshe D. Tendler

*or file*

Rav Moshe Bogomilsky

Rav Shmuel C. Gurwitz

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK )

        John J. Murphy, being duly sworn, deposes and states:

        1. I am over 18 years of age, I am not a party to this case, and I reside in

New York, New York.

        2. On August 19, 2004, I served a true and correct copy of the foregoing

Petition for Removal upon:

> Leslie A. Lupert, Esq.
> Sarah P. Karwan, Esq.
> Orans, Elsen & Lupert LLP
> One Rockefeller Plaza
> New York, NY 10020

by causing the same to be delivered in a securely sealed wrapper by hand to the

above-named at the above-stated address.

                                      John J. Murphy

Sworn to before me this
19th day of August, 2004

Notary Public

**THOMAS A. KISSANE**
**NOTARY PUBLIC, STATE OF NEW YORK**
**NO. 31-02K15009369**
**QUALIFIED IN NEW YORK COUNTY**
**COMMISSION EXPIRES 04/22/2007**